**ELLIS et al. v. SCOTT et al.**

No. 9017.

Court of Civil Appeals of Texas. San Antonio.

March 1, 1933.

Rehearing Denied March 29, 1933.

John R. Beasley, of Beeville, and H. S. Bonham, of Corpus Christi, for appellants.

Proctor, Vandenberge, Crain & Vandenberge, of Victoria, for appellees.

FLY, Chief Justice.

This is a suit by John R. Scott, J. E. Wilson, I. J. Miller, and James R. Dougherty, executors of the will of Richard J. Cook, deceased, against Mrs. Mamie Ellis and nine others, to secure the construction of the will of said Richard J. Cook.

The will is as follows, omitting nonessential parts:

"First: I direct that all my just debts and obligations be paid as soon after my death as practicable.

"Second: As early as possible after my demise, I direct that my executors file an inventory and appraisement of my estate and pay and adjust all claims and debts for which I may be liable, including partnership obligations and endorsements for others. I suggest that a limit of three to five years be al-

lowed to complete these settlements if necessary.

"Third: I direct that my executors or trustees hereinafter named provide a suitable and proper home for my beloved wife, Dora W. Cook.

"Fourth: Appreciating the many courtesies and special favors and services rendered me, I direct that my executors or trustees pay to Miss Helen Ransom, $1,000.00; to Miss Gertrude Linke, $500.00 and to I. J. Miller, $2,-000.00.

"Fifth: After the settlement of all just debts and obligations for which my estate may be liable, I direct that my executors or trustees have full power to dispose of any portion of my estate and reinvest and carry on all transactions pertaining thereto, and provide a trust fund, under their control or the control of their successors, to be held and handled during the life of my wife, Dora W. Cook, and at her death this trust fund shall be divided equally between the heirs of my wife, Dora W. Cook and my sister, Mamie Ellis or her heirs.

"Sixth: I give, devise and bequeath to my sister, Mamie Ellis or her heirs, all the land together with the improvements thereon inherited by me from my father, John W. Cook, and my mother, Frances A. Cook, being described in the partition deed partitioning the estate of Frances A. Cook.

"Seventh: It is my desire and I direct that the executors or trustees hereinafter named, provide for the education of John Cook Rees, provided however, that he takes proper action to change his name to read John Cook, and when this is done, he is to receive $5,000.00 when he reaches the age of twenty-one years. In the event that he does not comply with this provision he is to receive only $1000.00 when he reaches the age of twenty-one years. It is the intention of this provision that John Cook Rees shall have the opportunity to be educated in any chosen profession under the direction and authority of my executors or trustees.

"Eighth: I give, devise and bequeath to Mary Frances Rees and Louise Rees $1000.00 each as they become of age or are married.

"Ninth: I hereby constitute and appoint my friends, John R. Scott, J. E. Wilson, I. J. Miller and James R. Dougherty trustees and executors of my estate, any three of which may act or be a majority in any action taken relative to any transaction in connection with the management or disposition of my estate.

"Tenth: Realizing the uncertainty of life, I further direct that in event of the death of any of my designated executors and trustees, or refusal of any one of them to serve, the three remaining trustees shall select another to serve, except that it is my wish that whoever might succeed I. J. Miller as officer of the Commercial National Bank, Beeville, Texas, shall also succeed in this trust, as it is my desire that the Commercial National Bank, Beeville, Texas, shall be depository for my estate. In event that it should become necessary to have a successor for any of the other three, I suggest that in selection of successors men as near equal ability and character be selected to serve, and that a capable attorney be selected to succeed James R. Dougherty.

"It is my wish that after the completion of settlement of all claims against my estate and the provision of a home for my wife, Dora W. Cook, that the portion of my estate bequeathed to my sister, Mamie Ellis, shall be conveyed to her subject to the payment of $1000.00 per annum to the credit of the trust fund created above.

"In case of necessity or in the discretion of trustees, they may from time to time withdraw from the trust fund created and pay to my beloved wife, Dora W. Cook and to my beloved sister, Mamie Ellis in equal amounts. That is to say, should it appear that either of them needed assistance, or in the discretion of the trustee, it was to the best interest of those concerned to make a payment to either Mamie Ellis or Dora W. Cook, a like amount shall be paid to the other."

As a means to obtaining a construction of the will, the following eight questions were propounded to the court, through the petition, which, together with the answers thereto, are hereby copied:

"1. What funds of Richard J. Cook, deceased, shall be used in the payment of the community obligations of said Richard J. Cook and wife, Dora W. Cook?

"In response to the first question, all community debts of Richard J. Cook, deceased, and his wife, Dora W. Cook, shall be paid and discharged out of the community funds and estate of said Richard J. Cook, deceased, and his wife, Dora W. Cook, as far as may be possible, unless such community funds and estate are exhausted before such community debts shall be fully discharged, then and in that event all property and funds, including separate funds of Richard J. Cook, deceased, shall be used in the payment of community debts after the separate debts of Richard J. Cook, deceased, are settled out of his separate estate.

"2. What funds shall be used in the payment of the separate debts of Richard J. Cook, deceased?

"In response to the second question, the separate debts of Richard J. Cook, deceased, shall be paid out of his own estate without resort to the community estate of his wife, Dora W. Cook, unless the same shall be insufficient to discharge such separate debts.

"3. In what order shall the assets, both personal property and real property, be ap-

plied in the payment of the debts of Richard J. Cook, deceased?

"In response to the third question, the personal property shall first be sold to discharge the debts, and thereafter the real property.

"4. What property is included in the corpus of the deceased's estate which is to be managed and controlled by the trustees or executors herein?

"In answer to the fourth question, the corpus of the trust estate is composed of all the separate estate of Richard J. Cook and his community interest which is to be managed and controlled by the Trustees herein.

"5. Is the legacy to Mrs. Dora W. Cook charged upon the devise to Mrs. Mamie Ellis by the language of paragraph 10 of the will of Richard J. Cook, deceased?

"In response to the fifth question, the devise to Mrs. Dora W. Cook of her homestead is a charge upon the devise to Mrs. Mamie Ellis by virtue of paragraph 10 of the will of Richard J. Cook, deceased.

"6. What funds are to be used in the payment of the devises made in said will?

"In response to the sixth question, the legacies to Helen Ransom, Gertrude Linke, I. J. Miller, John Cook Rees, Mary Frances Rees and Louise Rees shall be paid out of the trust estate after the payment of the debts, and the homestead for Mrs. Dora W. Cook has been provided and the conveyance made to Mrs. Mamie Ellis.

"7. Considering the will in its entirety, was it the intention of the testator, Richard J. Cook, that his wife, Dora W. Cook, should receive the devise made her by paragraph of the will numbered 'Third' before any other legacy or devise made by the will be paid, or vest or be provided for?

"In response to the seventh question, the executors shall first provide a suitable and proper home out of the trust fund for the surviving wife, Mrs. Dora W. Cook, before any other legacy or devise in the will shall be paid or vest or be provided for.

"8. Did Richard J. Cook, deceased, intend by his will to devise only his interest in the community property, or did he intend to devise the entire community property thereby?

"In response to the eighth question, Richard J. Cook intended by his will to dispose of his separate estate and his interest in the community property only."

A report as to amounts collected and an appraisement of the property of the estate was included in the petition. The widow endeavored to prevent probate of the will, but failed. However, she obtained a decree giving her the widow's statutory allowance. It was also alleged that the executors had on deposit in a bank $50,214.55, and averred a readiness to proceed to pay debts and execute the provisions of the will when given a con-struction of its contents. It was indicated that there were some antagonistic claims between the widow and Mrs. Mamie Ellis, a sister of the deceased. She appears to be the only one dissatisfied with the decision of the trial judge, and she alone prosecutes this appeal.

The facts show that Mrs. Cook contested the probate of her husband's will, and, failing in that, she afterwards had the court to set apart to her the statutory allowance made to widows of deceased persons, consisting of a homestead, 200 acres of land, farming utensils and other personal property, and $200 in lieu of exemptions which could not be obtained in kind. She desired the widow's allowance and nothing more at that time, and she had repudiated the will by endeavoring to destroy and render it ineffectual. Afterwards, when a construction of the will was sought by the loyal trustees appointed by her dead husband, the contestant of the will came forward to claim anything bequeathed to her by the will. She made no offer to return the widow's allowance and elect to inherit under the will, but she held what the law had given her, and, like Oliver Twist, clamored for more. Does the law countenance such action? Can a legatee under a will repudiate that will, and elect to receive the statutory allowance instead of the testamentary bequests, and then, without returning the allowance into the body of the estate, demand and receive all bequeathed in the will? To sustain such a proposition would be rank injustice, destructive of the elements of honesty, and subversive of the principles which should govern civilized society.

The language of the will does not disclose that the wife had any community interest in the property set out in the will, and it will be presumed that the testator was disposing of property owned by him alone. Avery v. Johnson, 108 Tex. 294, 192 S. W. 542. If, however, the testator did attempt to bequeath community estate, still, if Mrs. Cook, after the will was probated, elected to receive as her part of the estate the widow's allowance, she would be precluded from claiming anything under the will. Whatever interest may have been intended for her under the will, she had rejected and had made the statute her refuge and haven of protection. She was adjudged everything the law allowed her. If she had any community interest in the property bequeathed by Richard Cook, she failed to prove it. The presumption is she had none.

The doctrine of election, as applied to remedies and interest in property, is a wholesome and salutary one. It allows a choice to a beneficiary, and is a right of value, but it should not be used in such a manner as to vex and harass others concerned, and as a means of exploiting an estate and depriving others of their rights. Such election should not be

one that every varying emotion of the party should be able to change the result of, to the harm of others. In this case, to allow the wife to repudiate the will, obtain her allowance under the statute as a widow, and then go in and obtain the bequests made to her in the repudiated will, would be rank injustice. It is clearly indicated in article 3493, Revised Statutes, that such a procedure could not be tolerated, for it is provided that, in case of a solvent estate, where the assets show an excess above the indebtedness, the widow can only obtain her part of the excess by releasing her allowance to the estate, with the exception of her homestead. Under the Texas Constitution, art. 16, § 52, a life estate in her homestead was given to the widow so long as she elected to so use it, but in the will of the deceased husband provision is made for another homestead for his widow. She wants the constitutional homestead and the testamentary one also. Should she be allowed to have two homesteads? Would not acceptance under the will be equivalent to an abandonment of the homestead set apart to her by the court? It is apparent that no such procedure is contemplated by law. If it be conceded that the widow could hold her statutory homestead, and not put it back into the estate, still, in order to share in the estate, she would be compelled to return the other allowances made to her.

In the will it was provided that the executors should prepare "a suitable home" for the wife, but, before they could carry out the provisions of the will, she had the existing homestead set apart to her by the court. Of course, she had only a life estate in the home set apart to her, and would probably have had absolute title to the home the husband desired to have prepared for her, but she rejected the testamentary home and chose the statutory one. This she had the right to do, but she cannot now claim any right to a home under the will, or claim a right to an interest in the trust fund to be created under the will for her. She chose to take her statutory allowance; it was given to her, and she must abide the consequences. She will not be permitted to blow hot and cold with the will of her dead husband.

It might be supposed from the manner of discussion in this case that the estate was being distributed under the will, and that Mrs. Cook had received everything bequeathed her by the will, as well as everything given to her under the statute, but such is not the case. This appeal has been prosecuted from the judgment construing the will, and which construction would permit Mrs. Cook, when the estate is distributed under the will, to retain all property set apart to her in the order giving her the widow's allowance. While the estate has not been actually distributed under the will, its provisions and status have been fully determined by the judgment of construction by the district court. There is no complaint of that construction, except in so far as it relates to Mrs. Cook.

In the judgment of the court the provision for the home for Mrs. Cook is given precedence over the claim of Mrs. Ellis. The bequest for the new home was placed ahead of everything in the will, and yet Mrs. Cook had chosen to take the old home, and had it judicially declared to be hers. Can it be assumed that the husband anticipated that his wife would obtain the old home, and then demand the new one also? That seems hardly reasonable. The testator desired a suitable home for his widow. She selected the one that suited her, and thereby obtained the home intended for her by the testator.

The court found in his judgment that the will applied alone to his separate estate and his interest in the community estate. If there was a community estate, the interest therein of the wife was in no manner affected by the will, and it was not involved in the proceedings for construction of the will.

The third proposition is overruled, as the debts due by the estate will be liquidated, according to the terms of the law, and the matter is one of no importance under the facts before this court.

We hold that the construction of the will was correct, and that construction would not be changed by the fact that Mrs. Cook had repudiated the will and had elected to take under the statute rather than under the terms of the will. Her actions could not affect the will, but affected her status under the will only.

The sixth proposition is without merit, and is overruled.

The construction of the will, on its face, by the court we think was correct, but, in the light of the testimony presented to the court, it should not have been held that the executors should furnish Mrs. Cook with another home. She had chosen under the statute the home she desired, and, if the court intended to convey the idea that, in spite of her acts in choosing her home, another should be provided, it was error. We hold that the wishes of the testator that his surviving wife should be provided with a home have been fully complied with by her selection of the existing home, and she will not be permitted to obtain another. Striking out the conclusion of the judge that another home should be provided, the judgment construing the will is affirmed.